CHITTENDEN,
December,
1832.
C. M. HUNTINGTON vs. B. BISHOP Trustee of E. SPOONER.

A trustee of an absconding debtor has no right to a trial by jury as to the question whether he has effects or not.

Nor a right of review from a judgement that he has effects.

Other evidence than the disclosure is admissible to charge the trustee. So his disclosure may be contradicted.

This was a trustee process brought against Bishop, under the statute, charging him as trustee of one E. Spooner.

The trustee (Bishop) having filed his disclosure, claimed a trial by jury. This was denied by the County Court.

From the disclosure and other evidence adduced upon trial, it appeared, that in January, A. D. 1827, the said Huntington and Spooner were jointly concerned in running a line of stages between Burlington and Richmond, on the line between Burlington and Boston, and transporting the mail and passengers on said line, in connexion with other proprietors to the eastward—that on the 23d of January, 1827, Bishop, the trustee, purchased of Spooner his interest in the establishment, consisting of sundry horses, carriages, harness, &c., with the right to receive a certain portion of the mail money, which Spooner represented to Bishop he had the right to receive, by agreement with the other proprietors. The interest of Spooner in the visible property, was estimated at one hundred dollars, which Bishop paid him ; and the " privilege of the road," at four hundred, for which Bishop gave Spooner two notes of two hundred dollars each which still remained unpaid. Bishop commenced running the stages, but immediately after, Huntington refused to be connected with Bishop, or to permit him to intermeddle with the business, alleging, that by agreement between himself and Spooner, neither was to sell out until the joint property was paid for : they having executed their joint notes for the same, when they purchased. Upon this, Bishop applied to Spooner, then at Woodstock, who promised to come over and see him put in possession of the privilege ; but instead of doing so, left the state:—That Bishop never run the stage afterwards, but sold the visible property to I. D. for seventy-five dollars, and gave up to him the privilege of the road, mail money, &c., upon his (I. D's) undertaking to indemnify

him (Bishop) against the notes above mentioned. Bishop contended on trial that Spooner had deceived him, and obtained the notes by false representations, and that he had never received the consideration for the notes. It did not however appear that Spooner had not the interest in the line which he represented, but it did appear, that, in consequence of Huntington's refusal to run in connexion with Bishop, he did not enjoy the purchase as he expected. In the course of the hearing, testimony was offered by the plaintiff extraneous of the trustee's disclosure, which was objected to by the trustee, but admitted by the Court.

The Court decided, that Bishop had effects of the principal debtor, and was chargeable as trustee.

The trustee moved for a review, which was denied. He therefore took his exception, 1st, To the decision denying the trial by jury,—2d, To the finding on the facts adjudging him chargeable, and 3d, To that denying the review.

*Maeck for the trustee.*—By the bill of exceptions, three points are presented for the decision of the Court : First, Had the trustee the right of review ? 2d, Did the Court err in admitting testimony to impeach the trustee on points where he had been specially interrogated ? 3dly, Had the trustee the right of having his disclosure tried by a jury ?

1, The defendant was entitled to review his cause. The right is given to him by the express words of the statute. The act of 1797 gives the party in all cases the right of review, except in certain cases mentioned in the act ; and the act of 1824, R. L., p. 122, remodelling the Supreme and County Courts, expressly enacts, "That either party may once and no more review his cause to the next term of the County Court," except the judgment was by default, or twice for the same party. The right being general and extending to all cases where the County Court has jurisdiction or did have jurisdiction at the passing of the act, it follows that the party had the right of review unless that right was taken away by some express statute ; and no such statute exists.

2. Evidence to contradict the answer of the trustee was improperly admitted.

<div style="margin">CHITTENDEN, December, 1832.

Huntington vs. Bishop.</div>

Chittenden,
December,
1832.

Huntington
vs.
Bishop.

It is an undisputed rule of the common law that a party shall not be admitted to impeach his own witness. The right in the present case is claimed by virtue of the phraseology of the statute. In 15 Mass. R., p. 205, it is said by the Court, that " Statutes made in derogation of the common law are to be construed strictly ; and they are not to be construed as taking away a common law right unless the intention be manifest." The question then is, did the Legislature intend to say that the party might use, and then abuse his witness? If then any sensible effect can be given to the clause " or by other proof," on the 151st page of R. L., without destroying the common law doctrine, the Court will do it. We contend that the only effect to be given to that clause is to admit the plaintiff to introduce testimony to charge the trustee, only in cases where the trustee, by the rules of the law, is not bound to answer ; or where, from want of information, he is unable to answer.

In 2 Mass. 96—4 Mass. 81, 85, 272—5 Mass. 49, and 11 Mass. 90, and 8 Pickering 67, it was decided that other evidence could not be admitted. In 13 Mass. 104, it is decided that the trustee is under no obligation to answer whether the claims he wishes to offset against his principal are usurious, and therefore void. So that he is under no obligation to answer whether the conveyances he has received of his principal are fraudulent or not. Suppose the claim of the absconding debtor against the trustee to be barred by the statute of limitations, would the trustee be compelled to answer whether he had not revived the debt by a new promise? Or again, suppose the debt Spooner held against Bishop was a judgment and jail bond given on the execution, would Bishop be compelled to answer whether he had broken the bond? It is believed that the Court would protect a trustee from the consequences of such disclosures, and yet in these cases and those of another class we are about to allude to, the Massachusetts Courts refuse to admit other evidence, though the evidence may not tend to impeach the trustee's disclosure, but merely to supply deficiencies in the disclosure. They hold the judgment of the Court must be on the disclosure of the trustee alone. We contend that that the clause " by other proof" was wholly intended by the Legislature to apply

CHITTENDEN,
*December,*
1832.

Hutchinson
*vs.*
Bishop.

to cases similar to the foregoing, where the trustee still remains shielded by the policy of the law from answering, or to the following class of cases where he may be unable to answer. If the dealings between the trustee and his principal were matters of account, it might be out of his power to state the absconding debtor's amount against him, and yet in the power of plaintiff to prove it. Suppose the liability of trustee to arise upon the ground that he was an indorser, and payee has failed : To entitle indorsee to recover against his indorser it is necessary for him to prove affirmatively a demand of payment on payee, or some legal excuse for not demanding payment. Now the trustee may not know facts enough to say whether he was liable or not, and yet it might be in the power of the plaintiff to prove it affirmatively. There are so many cases for this clause of the statute to attach without derogating from the principle of the common law. that it is believed the Court will say it never was the intention of the Legislature to derogate from the common law, but only places it in the power of the creditor to prove his case by other testimony if the trustee was legally or in fact incompetent to put the Court into possession of the necessary facts.

3dly, Was the trustee entitled to a jury trial ? We contend that he was entitled to a jury trial, and that the right is guaranteed both by the constitution of the United States and the constitution of Vermont. The 9th article of the amendments to the United States constitution provides, that in suits at common law, where the value in controversy shall exceed $20, the right of trial by jury shall be preserved. And the second clause of the 6th article declares among other things, that " This constitution shall be the supreme law of the land." No state can exercise sovereignty, and no court can administer justice contrary to the letter and spirit of the constitution. It is the fundamental law of the empire. Most of the provisions of that constitution, we admit, refer to United States in their collective capacity, and to the power of making and administering laws as officers of the United States. But there are some general provisions which may be considered as declaratory of the rights and privileges of the people, considered not merely as citizens of the United States, but as cit-

CHITTENDEN,
December,
1833.

Huntington
vs.
Bishop.

izens of the respective States. Thus, that they shall have the right of trial by jury—that they shall be protected from warrants, unless issued with certain limitations, are general provisions which bind not only the legislative powers of the United States, but the legislative powers of the several States. But whether this provision refers to, and binds the legislative and judicial powers of the respective States, still we contend that the right of trial by jury is clearly preserved by the constitution of Vermont.

The 12th article of the bill of rights declares, " That where an issue in fact proper for the cognizance of a jury is joined in a Court of law, the parties have a right to trial by jury, which ought to be held sacred ;" and the 31st section of the constitution declares that " Trials of issue proper for the cognizance of a jury in the Supreme and County Court, shall be by jury." This language, with a proper view of issues proper for the cognizance of a jury, will admit of no misconstruction. By the common law, which, by legislative enactment, is made part of our code, issues of fact are to be tried by the jury—issues of law by the Court : And the instance is not to be found in England where the issue is purely a matter of fact, and decisive of the merits, where the party can be deprived of a jury trial. The constitution limits the right to Courts of common law, which is the case here. It may be said that the practice has been different, but no length of practice can nullify the constitution. Practice to-day, does not become precedent to-morrow. If there is any doubt, it should be solved in favor of trial by jury.

1st, Because the framers of the United States constitution and of the constitution of Vermont have shown by their affirmative declarations an extreme anxiety to preserve and extend the right of trial by jury.

2d, Because they are the best and most natural triers of fact.

3d, Because it was in contemplation between Bishop and his principal, at the making of the contract, that if a controversy should arise out of it, it should be determined by a jury ; and Bishop cannot have the matter tried by a jury unless tried in this action.

4th, Because the right of trial by jury is in accordance

with the genius and feelings of the people, and should not be abridged on any account whatever.

Lastly, Is the trustee liable on his disclosure ? We contend he is not.

1st, From the fraud of Spooner in the inception of the contract.

2d, The consideration has failed.

3d, The contract was rescinded by the mutual agreement of Bishop and Spooner before the present plaintiff's rights attached. The establishment of either of these positions is decisive of the case.

The first point is too well settled to need either argument or authority to fortify it. The case shows both a false representation and concealment of material facts. Good faith is essential in all contracts, and false representations receive no more countenance at law than in equity.

The consideration of the notes now in question has wholly failed, so far as the privilege of running the stage and receiving the mail money formed the consideration of the notes in question ; and it has been of no benefit to Bishop. This part of the contract was executory at the time, and Spooner has failed to execute it. It was a condition precedent on his part. The circumstance of B's running the stage over into Burlington is of no consequence, and if it were to be treated as of any importance, still the consideration has partially failed, and yet the judgment is for the full amount of the notes. The defendant had the right to avail himself of a total or partial failure of the consideration.

The contract was rescinded by the mutual agreement of parties. It is not necessary to put this case upon the general doctrine of the right of a party to rescind his contract. The right and power of both parties to rescind their contract must be as perfect, as to bind themselves in the first instance. So far as respects the notes in question, it was rescinded by the mutual agreement of both parties.

*Briggs for the plaintiff.*—In this case the trustee made his disclosure agreeably to the statute, and after a trial the Court adjudged him trustee to the amount of the notes in question. The trustee claimed to have a trial by jury, which was refused.

CHITTENDEN,
*December*,
1832.

Huntington
*vs.*
Bishop.

CHITTENDEN,
December,
1832.

Huntington
vs.
Bishop.

1. The plaintiff contends that the plain language of the statute, and the uniform usage of the Courts in this State, have confined trials under the trustee act to the Court. If any question arises whether chargeable or not, it is upon facts disclosed by the trustee himself; and therefore nothing is left for the action of the jury. So the matter is treated in other states having statutes similar to ours. 6 Dane's Dig. 498.

2. Proceedings under the trustee act, and the act itself, do not depend upon the principles of the common law, but are deviations from it; and therefore not subject to the 12th article of the constitution of Vermont.

3 They are in their intrinsic nature Chancery proceedings—the declaration being a bill; the disclosure the answer; and the trial similar, except that the testimony is taken *viva voce* instead of being written; and when fully made up, the Court decide upon the whole case. If this statute did not exist, Chancery would give a remedy in all cases proper for its application—with the difference only of greater delay and expense: and most of the other states have statutes like ours prescribing a similar mode of trial. These views obviate the argument drawn from our constitution, and the 9th amendment of the constitution of the United States.

4. The bill of exceptions having stated the evidence objected to, as immaterial to the issue, it is as immaterial to inquire whether it was properly or improperly admitted. There is an obvious difference between admitting improper evidence to a jury, when the effect it may have, cannot be ascertained, and to a *Court* who declare it to have been impertinent, and that it was laid out of consideration.

5. It is clear that the trustee was not entitled to a review. The proceeding against trustees, is not a civil cause in the sense of the statute—Rev. Stat. p. 581—being merely a mode of making a legal application of the debtor's intangible effects upon his creditor's debt with safety to all persons concerned. If the trustee admits himself such, the Court directs the application as a matter of course. If any question is made whether liable or not, it is upon trustee's own disclosure, which is not to be varied even by the ingenuity of our opponents. If dissatisfied with the judgment of the

County Court, the trustee can appeal to the Supreme <span>Chittenden, December, 1832.</span>
Court; but here again, their judgement is founded upon
the same unalterable facts. No one reason on which the
privilege of review is founded has any application to such <span>Huntington vs. Bishop.</span>
a case.

The opinion of the Court was pronounced by

Phelps, J.—It is insisted in this case that the Court be-
low, in denying the trustee a trial by jury, has denied him
the enjoyment of a right guaranteed to him by the Con-
stitution. The sacred regard which should be entertained
by all our judicial tribunals for the provisions of that char-
ter, from which all the powers of government are derived;
the great importance, attached to the trial by jury, and
the scrupulous care with which it is guarded in all our
Constitutions, renders this question one of serious import.
Whenever this right is denied, it becomes us carefully and
seriously, to examine those instruments and see whether
any of its provisions have been disregarded.

The trustee in this case predicates his right upon the
9th Act of the amendment to the Constitution of the Uni-
ted States. That article provides, "that in suits at com-
mon law, where the value in controversy shall exceed
twenty dollars, the right of trial by jury shall be preserv-
ed; and no fact tried by jury shall be otherwise re-examin-
ed, in any Court of the United States, than according to
the rules of the common law."

It is very doubtful whether this article has any reference
to the proceedings of the State Courts. These articles of
amendment, were proposed by Congress, after the Consti-
tution was adopted. The resolution of that body, propos-
ing the amendments, assigns a reason for the proposal,
" the desire" of the conventions of several of the States, at
the time of the adoption of the Constitution, " in order to
prevent misconstruction or abuse of its powers, that fur-
ther declaratory and restrictive clauses should be added."
It is apparent that the object of this article was, to prevent
"misconstruction or abuse" of the powers conferred by
the Constitution, and for that purpose this " restrictive
clause" was added. It was designed as a check upon the
General Government. It does not, in its terms, apply to

25

CHITTENDEN,
December,
1832.

Huntington
vs.
Bishop.

the State Governments, and was introduced, as appears by the preamble just quoted, with reference solely to the Courts of the United States. The article itself affords evidence of the same truth. The restriction upon the re-examination of any fact tried by jury is limited, in terms, to the Courts of the United States. This restriction was most obviously necessary to render the article perfect, and fully to secure the right in question; and if the former clause was intended to have any bearing upon the jurisprudence of the States, no possible reason can be assigned why the latter clause was not thus limited. It may be added, that no control is given to the general government, by the constitution, over the jurisprudence of the States; and such a restriction, as a measure of precaution against the "abuse of its powers," was wholly unnecessary. Moreover, had it been intended as restrictive of the States, it, would neither have been introduced with such a preface, nor concluded in the same language. The provisions of the instrument, intended to be restrictive upon the States, are so in terms.

But conceding, for argument's sake, that the article in question has reference to the Courts in this State; the question arises, what is the import and true construction of the article?

In the first place, the provision is confined to suits "*at common law.*" It would be difficult we apprehend for the trustee to make out, that this is a proceeding at common law. It is a proceeding under a statute, authorized and regulated by statute, wholly unknown to the common law, and existing no where except by statute.

In the next place, the enactment is that "*the* right of trial by jury shall be *preserved.*" Here a known pre-existing right is spoken of—a right established and regulated by immemorial usage—a right existing at common law, and "preserved" in all cases, where the proceedings are according to the course of the common law. There is no attempt to create or extend a right, but the obvious purpose is to preserve and secure this right, in all cases, where, by the course of proceeding, it is the appropriate mode of trial. It would certainly do violence to this article, so to construe it, as to prohibit all Chancery proceedings, all

CHITTENDEN,
December,
1832.

Huntington
vs.
Bishop.

proceeding in Probate, or Prize Courts—and in short all the various proceedings, in the administration of justice, which take place without the intervention of a jury. The next effort is to predicate this right upon the Constitution of this State. That constitution is merely declaratory of this right, " when any issue in fact, proper for the cognizance of a jury, shall be joined in a Court of law." The proper construction of this article leads to the same result. It declares, that " the parties *have* a right to trial by jury, &c., evidently referring to a preexisting right, well understood, and well defined; and as existing, in all cases, " proper for the cognizance of a jury." This last clause is a direct reference to the usages and practice of the common law. Unless this be understood, and the right intended is understood to be such as had been before enjoyed, the article is nugatory. If every successive legislature is to determine for itself what is proper for the cognizance of a jury, the article is of little value. The result is, that the right is secured by this article, only so far as it is sanctioned by established usage, and where, from the nature of the issue, and the course of proceeding, the trial by jury is the appropriate mode. In conformity with this construction, has been the whole course of our legislation and jurisprudence since the adoption of our Constitution. We have had our Chancery proceeding, our Probate Courts, and even our action of account, and book debt, operating from day to day, without dreaming, that all this was a gross violation of the Constitution, which is now discovered to have secured to the parties a trial by jury in all controverted cases.

This leads me to enquire whether this is a case proper for the cognizance of a jury. If it be so, then indeed the right contended for is guaranteed by the Constitution.— And this enquiry involves the nature of the action, and its analogy to other proceedings, with respect to which the right of trial by jury has never been the subject of debate.

This suit as between Huntington, the plaintiff, and Spooner, the principal debtor, is purely a common law proceeding; and the issue between them is doubtless proper for the cognizance of a jury. But the proceeding against the trustee is a mere incident to the principal suit. This

CHITTENDEN,
December,
1832.

Huntington
vs.
Bishop.

proceeding as already observed, is a creature of the Statute, a part of the attachment law; and the object of it is merely to secure the estate of Spooner to respond the judgement which may be recovered in the principal suit. The Statute styles him, a trustee, and at the same time makes him so, or perhaps more properly changes the *cestui qui trust*, and transfers the use from the principal debtor to his creditor. After the service of the process, the trustee becomes a sort of stake holder, a depository of the effects for the party ultimately entitled to them. He is considered as holding in trust, subject to the direction of the Court. In conformity with this view, he is treated like a trustee—he is called upon to disclose under oath, as to the effects in his hands, and the trust is enforced precisely as it would be in Chancery. His rights are no farther involved than those of any trustee, nor indeed farther than are necessarily so in the execution of a trust.

From this view of the subject it is clear that this proceeding bears no analogy to any proceeding at common law, but is analogous in all respects to a proceeding in Chancery. Unless then the Constitution of this State secures to the party a trial by jury, in every case of disclosure or answer upon oath in Chancery, it can hardly be extended to the case in question. Nor is the issue (if issue it can be called) proper in itself for the intervention of a jury. There is an absurdity in submitting to a jury the determination of facts, supposed to be locked up in the breast of the party, and where the principal if not the only evidence is his disclosure upon oath. If as in a neighboring State no evidence is received to contradict the disclosure, a more rediculous farce than a trial by jury can hardly be imagined.

The only remaining enquiry on this part of the case, is, whether a trial by jury is given by the Statute. It is remarkable, that the Statute authorizing this proceeding has no allusion to any such trial, but its language throughout seems to contemplate a trial by the Court. Rev. Laws, 349.

Some of its provisions, particularly the 3d section, are inconsistent with the notion of a trial by jury. If such mode of trial was contemplated, it is strange that no provision should be made in relation to it.

CHITTENDEN,
December,
1832.

Huntington
vs.
Bishop.

We are by no means anxious to engraft, by force of construction, this mode of trial upon the trustee process. To do so would be to render the proceeding tedious, and embarrassing, and moreover seriously expensive; and what is still worse, defeat the very purpose of the Statute, by consuming the effects in protracted litigation. We are therefore of opinion that the County Court did right, in refusing a trial by jury.

The next exception is taken to the decision of the Court, in admitting other evidence than the disclosure of the trustee, in order to charge him. If the analogy, supposed to exist between this proceeding, and a proceeding in Chancery, do actually exist, so far as that analogy would serve to determine the points, it certainly tends to support the decision of the Court. In all cases, where it is attempted to enforce a trust in Chancery, the rules of that Court admit other proof than the answer to establish it.—— Unless then, the Statute regulating the process confines the proof to the disclosure alone, it would seem that the usual mode of proof, in analogous cases, should be adopted. The Statute however has no such restriction. On the other hand, it is only at the election of the plaintiff, that the trustee is examined upon oath; (see sec. 4,) evidently implying, that his disclosure is not the only legal evidence; and the expressions " or other evidence" as used in the 4th & 5th sections of the act evidently contemplate proof from other sources.

The supposed hardship on the part of the trustee, in subjecting his disclosure to contradiction by extraneous evidence, is rather imaginary than real. In ordinary cases of contested right, the party is denied the privilege of his own testimony. He is placed; by the course adopted in this case upon the same footing as if called to disclose by process in Chancery; and enjoys the advantage of having his disclosure taken as true until disproved. On the other hand, to treat his disclosure as conclusive, would introduce an anomaly in the law, and tend to jeopardize his own integrity as well as the rights of his adversary.

We are aware, that in an adjoining State a different rule has obtained, in their practice under a similar Statute. To the authority of their decisions, however high it

Chittenden,
December,
1832.

Huntington
vs.
Bishop.
may be, it is sufficient to oppose the uniform practice. of our own Courts, since the existence of the Statute.

Another ground of exception is, that the Court below erred, in holding the trustee chargeable upon the facts stated.

The trustee insisted in that Court, that the notes given by him to Spooner were not legally due. 1st. Because they were obtained by misrepresentation ; and 2ndly, because the consideration had failed.

As to the first ground, it is sufficient to observe that there was no evidence of any misrepresentation. So far as appeared, Spooner was the owner of the property which he represented himself to own. And as to the second it appeared that the property actually passed to the trustee. The only difficulty arose from Huntington's refusing to be connected with him in business, and this was a matter beyond Spooner's control, and for which he was not responsible. Another answer may be given to this defence.— Bishop, finding difficulty in conducting the business, sold out to J. D., who paid him $75, for the visible property, and agreed to indemnify him from the notes in question, and it did not appear that J. D. experienced any difficulty in enjoying the privilege. It is right therefore that J. D. should pay for the property, and he must be compelled to it, in the only practicable modes, viz. through his indemnity to Bishop. As to the latter, the whole subject of a failure of consideration consists simply in a loss of $25, on the re-sale of the property.

We come now to the fourth and last ground of exception, viz : the denial of the right of review. This right is claimed by force of the judiciary act of 1797, and the supplementary act of 1824.

It is to be observed that the first act has, previous to the provision for a review, no reference nor allusion to any matter or proceeding, not within the ordinary common law powers of a Court of general jurisdiction. The right of review there given, is evidently referable to such suits or actions as might by the rules of the common law be sustained in such Courts, and where the proceeding is according to the course of the common law. The act has no reference to any anomalous proceeding, created and regu-

lated by particular statutes. It is further to be remarked, that the " trustee act," as it is denominated, was not then passed; and it is not to be inferred, that the review was intended to be extended to a proceeding then unknown to our laws.

CHITTENDEN, *December,* 1832.

Huntington *vs.* Bishop.

The act of 1824, on the same subject, has reference to actions of the same description, and is in effect merely a restriction of the right given by the earlier statute. This proceeding is governed exclusively by the trustee act; and it is not to be supposed that the Legislature intended to subject a proceeding, created by special statute, and regulated by such statute throughout, to the operation of the law which has reference to the ordinary common law jurisdiction of the Courts.

With respect to the trustee act, it contains no provision for a review; but on the contrary, all its provisions seem to exclude it.

Further, this proceeding being in the nature of a Chancery proceeding, the right of review, as given by statute, is hardly applicable to it. If it were allowed, it would carry with it as a necessary consequence the right on the part of the trustee to vary his disclosure, tempting him to vary it according to the exigencies of his case, and thus putting at hazard the administration of justice.

Finally, the proceeding against the trustee being merely preliminary to the trial of the principal suit, to admit the right of review, which must necessarily be mutual, and expose the parties to the consequences of three trials with the trustee, and perhaps as many more with the principal debtor, involving a ruinous waste of time, and money, and defeating the very purpose of the act—would be giving to the act a construction and an effect which we are satisfied the Legislature never intended.

The judgement of the County Court is affirmed.