RUSSELL B. HOLTON, ADMR. *v.* F. V. HASSAM AND E. M. GALLAGHER.

January Term, 1920.

Present: WATSON, C. J., POWERS, TAYLOR, and MILES, JJ.

Opinion filed October 5, 1920.

*Law Action Properly Transferred to Equity—Equity Will Retain Jurisdiction for Complete Relief—Right of Jury Trial Not Denied by Transfer of Case to Equity—Landlord and Tenant—Assignments of Lease Not Properly Executed and Recorded—Acceptance and Retention of Rent Recognition of Assignment of Lease—Presumption of Possession by Assignee of Lease—Evidence—Deeds of Defendant's Chain of Title Limiting His Rights—Presumption from Continued Holding That Assignee Entered for Unexpired Term of Lease—Boundaries—Evidence of Use and Occupation According to Line—Estoppel—Parties Claiming Under Deeds Bound by Recitals Therein—Tenant Cannot Deny Landlord's Title—Giving of Second Lease Revocation of First Lease—Presumption as to Heirs of Deceased Person—Findings Not Reviewed in Absence of Transcript.*

1.  Plaintiff's action for trespass *quare clausam fregit*, seeking treble damages for cutting trees, was properly amended into a suit in equity and transferred to the court of chancery, where the bill as filed showed generally, and, as amended, specifically, that the defendant had committed and threatened to commit repeated acts of trespass, which would be destructive of the estate or inflict irreparable injury; equity having jurisdiction to prevent or stop the entire wrong by injunction, as was specifically prayed.

2.  Equity jurisdiction which has rightfully attached for one purpose should be made effectual for the purpose of complete relief.

3.  The transfer of the action at law to the court of chancery did not deprive the defendant of his constitutional right of trial by jury, because the plaintiff could have adequate and complete remedy only in a court of chancery; and, a court of chancery not being a common-law court, a trial by jury of issues of

fact in a cause pending therein is not demandable as a matter of right.

4. Assignments of a long term lease are not invalid as respecting the administrator of the last assignee because not acknowledged and signed by two witnesses, for G. L. 2746, providing that an assignment of a lease for more than one year, not executed and recorded as required in the case of deeds, "shall be null and void as against all persons but the assignor, his heirs, or devisees," impliedly makes such an assignment good as against the assignor, his heirs, and devisees, and in favor of everybody else.

5. Where the last assignee of several assignments of a lease from a town of a part of a public lot and his legal representatives continuously occupied the premises thereafter for many years without interruption and paid the rent on the same, the town's acceptance and retention of the rent was not only a recognition by the town of his possession under the lease, but also of the several successive assignments of the lease, which were recorded in its clerk's office.

6. In such circumstances, nothing to the contrary appearing, the law will presume that the different assignees of the lease took possession of the premises in the order of their different assignments, and paid rent as reserved by the lessor.

7. Where plaintiff claimed title to the west part of a public lot as assignee of a lease of all the lot not included in a prior lease to A., and the defendant, who claimed to own all of A.'s rights, claimed that A.'s lease, which had been lost and had never been recorded, covered the whole lot, certified copies of the deeds in the only line of title of record under which defendant's claim could be based, and which conveyed only the east part of the lot, were properly received in evidence.

8. Neither A.'s lease nor any assignment of it having been recorded, it will be assumed, in support of the decree, that the chancellor inferred that P., the first grantor of record of the part of the lot covered by A.'s lease, acquired all of A.'s rights under his lease by assignment; and, P.'s grantees having occupied the premises down to the present time, it will be assumed that P. entered for the whole of the unexpired term of the lease, and as assignee of the term.

9. Evidence that one of defendant's predecesors in title maintained a boundary fence for many years, which corresponded with

the line in dispute, was admissible as tending to show where the line was.

10. Parties claiming title under deeds are bound by the recitals therein by way of estoppel.

11. A tenant cannot set up a leasehold title under a lease of earlier date, executed and delivered by his lessor to a third person under whom he has no standing, as this would be denying his lessor's title.

12. Where it did not appear that the lessee of a public lot from a town ever took possession of it under the lease or paid any rent, and the lease contained a clause as to forfeiture for default, the subsequent giving by the town of another lease of a part of the lot, which was thereafter operated under by both parties thereto, was an act showing the resumption of possession of the lot by the town, and warranted a finding that the first lease had become null and void under its terms relating to forfeiture, or had been abandoned by mutual consent; but in either event there was a "revocation" of the lease, for a revocation may be by operation of law, or by the act of the parties.

13. Where the defendant claimed a leasehold title through the grand-nephew of the original lessee, no interest in the grand-nephew in the leasehold was inferable from the mere fact of his relationship, but the defendant had the burden of proving it; for while the presumption of law is that every deceased person leaves heirs capable of inheriting or next of kin, there is no presumption that a person of mature years left no children, nor father, nor mother.

14. Where the transcript is not before the Court, it cannot be said in review that the findings of the trial court were not warranted by the evidence.

APPEAL IN CHANCERY. Bill for an injunction and to establish title to certain premises. There was a hearing on defendants' demurrer to the bill at the March Term, 1917, Washington County, *Wilson,* Chancellor. Demurrer overruled, and bill adjudged sufficient. An appeal was allowed the defendants, which was ordered to lie, and all benefits of the demurrer were reserved to the defendants until final hearing. A hearing on the merits was then had before *Slack,* Chancellor. Decree for the plaintiff. The defendants appealed.

The quitclaim deed from Isaac Pennock to Joses Nelson, dated December 7, 1840, referred to in the opinion, described the land conveyed as follows: "Beginning on the north line of Lot No. 125 in Jane's survey, at the county road; thence east on the north line of said lot to the northeast corner of said lot; thence south on the east line of said lot to the southeast corner of said lot; thence west on the south line of said lot to the steepest part or brow of the mountain; thence north on the brow of the mountain half way across the width of said lot; thence west in a parallel line with said lot to the county road; thence on the county road to the first mentioned bound." The quitclaim deed from Joses Nelson to Alden E. Judevine, dated April 22, 1845, followed the description in the Pennock deed, with this addition: "Intending by this to be the same premises occupied by the late Benjamin Ainsworth to the time of his death." The opinion states the case.

*Charles Batchelder* for the defendants.

A court of equity is not the appropriate tribunal in which to try title to land, and where the main object is to determine legal title or fix boundaries equity is without jurisdiction. *Degroot* v. *Banking Co.,* 3 N. J. Eq. 198; *Andries* v. *Detroit, etc., Co.,* 105 Mich. 557, 63 N. W. 526; *Wykes* v. *Ringleberg,* 49 Mich. 567, 4 N. W. 498; *Callaway* v. *Webster,* 98 Va. 790, 37 S. E. 276.

*Sumner E. Darling, Jr.,* for the plaintiff.

WATSON, C. J.   [1]   The land in question is the west portion of lot No. 125 in the town of Woodbury, a public lot drawn to the support of the gospel. The action as first brought was trespass *quare clausam fregit* against defendant Hassam alone, seeking treble damages under section 5842 of the Public Statutes for cutting down and destroying a large number of trees growing thereon, the time alleged being on, to wit, the first day of September, 1913, and divers other days between that time and the day of the bringing of the suit in July, 1915. After that suit was brought, the plaintiff moved that the action at law be amended into a suit in equity and transferred to the court of equity, which motion was granted. Defendant objected to such transfer, and on appeal relies upon his claim that it was improp-

erly granted, because, he says, the bill contains no allegations on which equity jurisdiction can properly be based. But this claim cannot be sustained. The bill, as first filed, showed generally, and, as finally amended, specifically, that since the original act of trespass and since the action at law was commenced, defendant Hassam had committed and threatened to commit repeated acts of trespass to the property in question, which would be destructive of the estate or inflict irreparable injury. In such circumstances equity has jurisdiction to prevent or stop the entire wrong by injunction, as is specifically prayed. *Griffith* v. *Hilliard*, 64 Vt. 643, 25 Atl. 427; *Averill* v. *Vermont Valley R. R.*, 88 Vt. 293, 92 Atl. 220.

[2] We need not consider the other grounds of the demurrer; for since equity jurisdiction has rightfully attached on the ground mentioned, it should be made effectual for the purposes of complete relief. *Van Dyke* v. *Cole*, 81 Vt. 379, 70 Atl. 593; *Deerfield Lumber Co.* v. *Lyman*, 89 Vt. 201, 94 Atl. 837.

[3] Defendant urges in effect that the transfer deprived him of the right of trial by jury, for which reason it was in violation of the organic law. It is true that as the case stood in the court of law, a trial by jury was a constitutional right. But, as the plaintiff could have adequate and complete remedy only in a court of equity, and therefore his motion for a transfer to that court was properly granted, such constitutional right no longer existed. The guaranty in this respect, contained in the Constitution, has reference to the right of trial by jury previously existing according to the course of the common law. A court of chancery is not, strictly speaking, a court of common law, and consequently a trial by jury of issues of fact joined in a cause pending therein, is not demandable as a matter of right. *Huntington* v. *Bishop*, 5 Vt. 186; *Plimpton* v. *Somerset*, 33 Vt. 283; *Crampton* v. *Hollister*, 70 Vt. 633, 41 Atl. 588.

For the purpose of showing a leasehold title in Adolphus Holton, the plaintiff introduced in evidence a lease from the selectmen of the town of Woodbury to William M. Barnes, dated the 2d day of March, 1844, of "all that part of Lot No. 125 in Jane's survey, so-called, not included in a lease dated March 5, 1833, executed by selectmen of Woodbury to Benjamin Ainsworth, said lot drawn to the support of the gospel in said town of Woodbury, with all the appurtenances thereto belonging, to him the said Wm. Barnes, his heirs, executors, administrators and

assigns, to their proper use and tenantship," etc.   The lease
was for a term, "so long as wood grows and water runs," and
provided for the payment annually of a yearly rent, with a clause
of forfeiture in case of default on the part of the lessee.   Con-
cluding with the statement: "This lease is made in consequence
of the lease of same land dated March 5, 1833, being given up,
and is meant to be subject and agreeable to the present law pro-
vided for leasing of minister land in this State."   This instru-
ment was duly recorded in the records of the town of Woodbury
on the day it was executed.

[4]   On the 29th day of October, 1853, Barnes executed and
delivered to one Edward C. Johnson, an assignment of said lease,
which assignment was endorsed on the original lease, and was
recorded in the office of the town clerk of Woodbury on the first
day of November, 1853.   This assignment was signed by but one
witness, and shows no acknowledgment by the assignor.   On the
4th day of November, 1853, Johnson assigned said lease to
Samuel Britton, Wm. B. Sweet, and Charles Shipman, by an in-
strument in writing endorsed on the original lease.   As in the
preceding instance, this assignment contains but one witness, and
was not acknowledged by the assignor.   It was recorded in the
town clerk's office on the day of its execution.   On the 17th day
of November, 1863, Britton executed to Swett a transfer of Brit-
ton's right, title, and interest under said lease, which was en-
dorsed on the lease.   This transfer, though signed and sealed by
Britton, contains no witness, and no acknowledgment.   On the
15th day of August, 1870, Swett, in due form, executed by en-
dorsement on the original lease, and delivered to Adolphus Hol-
ton, his executors, administrators and assigns, a transfer of "all
the right, title and interest of myself, Samuel Britton, and
Charles Shipman in the within described land and premises and
to this lease."   The last two transfers named were recorded in
the town clerk's office on the 30th day of July, 1914.   The fore-
going is all the record title Adolphus Holton had to any part of
Lot 125, so far as appeared before the chancellor.

Exception was taken to the findings because the chancellor
received in evidence (against exceptions) the Barnes lease and
the assignments appearing thereon, on the ground that the as-
signments by Barnes, Johnson, and Britton, respectively, were
not legally sufficient to pass any interest under the lease, and on
the further ground that the lease and the evidence of the acts of

the parties referred to therein and in said assignments did not tend to show any right or title to any part of the lot in question, in the plaintiff or the estate which he claims to represent. It is urged, in effect, that since none of these three assignments was properly witnessed and acknowledged, none of them had any force, referring to the statute, G. L. 2746. By the provisions of that section, an assignment of a lease of lands, if the lease be for a longer term than one year, shall be by deed, signed, sealed, witnessed, acknowledged, and recorded, as required in the case of deeds; "and an assignment otherwise executed shall be void as against all persons but the assignor, his heirs or devisees." But impliedly this statute further says that such an assignment, executed without conforming to these statutory requisites, shall be good and effectual in law to transfer a leasehold estate as against the assignor, his heirs, and devisees, and in favor of everybody else. *Sterling* v. *Baldwin,* 42 Vt. 306; *Lemington* v. *Stevens,* 48 Vt. 38; *Buswell* v. *Marshall,* 51 Vt. 87. This being so, it should seem that no argument is necessary to convince one of the lack of merit in both assigned grounds of the exception.

[5, 6] It did not appear whether Barnes or any of the assignees of the Barnes lease, prior to Adolphus Holton, took possession of the premises described in the lease, or paid to the town of Woodbury the rent therein reserved. But Holton took possession of the premises soon after the assignment to him was executed, and he and his legal representatives continued to occupy the same, either personally or through persons holding under them, without interruption by any person, so far as appeared before the chancellor, until the fall of 1913. Holton died in 1873, and his widow, Helen A. Holton, was appointed administratrix of his estate. She continued to occupy and look after the said premises with the aid of her son, the plaintiff, until she died, when the plaintiff was appointed administrator *de bonis non* of his father's estate, which office he still holds.

In January, 1894, the administratrix paid to the treasurer of the town all the rent and interest on unpaid rent then due and owing to the town on that part of Lot 125 occupied by Adolphus and by his administrators after his death; the town accepted and retained the rent so paid; and all the rent which thereafter accrued was paid by the administrators to the treasurer of the town, and the same was accepted and retained by the town. We think such acceptance and retention of the rent was

not only a recognition by the town of Holton's possession of the leasehold estate under the Barnes lease, but also of the several successive assignments of that lease, all of which must have been known to the town because recorded in its clerk's office. In these circumstances it is not too much to say, nothing to the contrary appearing, that the law will presume a state of facts to continue which was lawful and regular in every respect, such as taking possession of the premises by the different assignees of the lease, by virtue and in the order of the different assignments, and paying rent as reserved by the lessor. *Pollock, C. B., Price* v. *Worwood,* 4 H. & N. 512, 514; *Propagation Society* v. *Sharon,* 28 Vt. 603.

It is found that from the time Adolphus Holton took assignment of the lease, he and his legal representatives occupied all the land now claimed by the plaintiff, continuously, making such use of it ·as they desired, and the nature of the land would permit, until after Hassam acquired title to the east part of the lot in 1913; that during all that time their occupancy was open and notorious and was hostile and adverse as to all parties except the town of Woodbury, and that as against all other parties they claimed during all that time to be the owner of the premises; and that no one within that time questioned their title or interrupted, or attempted to interrupt, them in their possession and enjoyment of said premises.

Defendants take the further position that where, as in this case, the title to the fee is recognized by the plaintiff to be in another, he cannot gain title to the premises by means of adverse possession. In support of this position reference is made to *Whittier* v. *Montpelier Ice Co.,* 92 Vt. 107, 102 Atl. 332. There is no doubt about the law as held in that case; but it goes only to the extent of saying that a lessee cannot acquire by adverse possession, rights against his lessor during the time he occupies the premises as lessee and pays rent without complaint. To the contrary of this no claim is made by the plaintiff. But he says that as against all persons except the lessor, prescriptive rights may be acquired not inconsistent with the rights of the lessor. In the view we take of this case, however, it is unnecessary to decide this question; for on the record the decree must be affirmed, irrespective of any rights which (it is claimed) may have been acquired by adverse possession. It appears that the plaintiff is claiming only such premises as were included in the Barnes lease.

[7, 8]   In his answer defendant Hassam avers that there was a lease of the whole of Lot 125 from the town to Benjamin Ainsworth, of which there is no record, and claims to own all the rights of said Ainsworth in that lot, except what he has conveyed to defendant Gallagher as stated further on.   It is found that at some time in 1913 defendant Hassam acquired some sort of an interest in the easterly part of said lot, by a conveyance from. Fullington and Hawley; that they acquired what interest they had in the lot from Alden E. Judevine, and Judevine acquired such interest as he had thereto under a quitclaim deed from Ethan N. Ainsworth and wife in 1854.   The findings state that plaintiff's exhibits 4, 5, 9, 12, 13, and 14 show all that appeared as to Judevine's record title.   These exhibits are made a part of the findings of fact, and are before us as such.   Hassam had no title to any part of the lot prior to May 31, 1915, except what he acquired from Fullington and Hawley.

The foregoing exhibits show that, in running back Judevine's chain of title, his immediate grantors were, as stated above, Ethan N. Ainsworth and wife, by quitclaim deed dated February 13, 1854; that the immediate grantor of Ethan N. Ainsworth was Nathan Ainsworth, by quitclaim deed dated December 6, 1850; that the immediate grantors of Nathan Ainsworth were Ethan N. Ainsworth and Benjamin F. Morse, by quitclaim deed dated March 8, 1850; that the immediate grantor of Ethan N. Ainsworth and Benjamin F. Morse was Alden E. Judevine, by quitclaim deed dated October 31, 1849; that the immediate grantor of Judevine was Joses Nelson, by quitclaim deed dated April 22, 1845; and that the immediate grantor of Nelson was Isaac Pennock, by quitclaim deed dated December 7, 1840.  Neither the lease from the selectmen of the town to Benjamin Ainsworth, nor any assignment of it is on record in the town clerk's office.

In view of the claim made by defendant Hassam in his answer, to own all the rights of Benjamin Ainsworth in Lot 125, except what he has conveyed to defendant Gallagher, we think it was not error to admit in evidence, when offered by the plaintiff, certified copies of the deeds in the only line of title of record under which such a claim could be based.   (Indeed, as will be seen further on, defendants have no other basis of record title on which they can stand.)   And on the facts shown by the record before us, the chancellor might well infer that Pennock, when he quitclaimed to Nelson, had acquired by assignment of the Ben-

jamin Ainsworth lease, all the lessee's right, title, and interest in said lot, under that lease; and if it be necessary to the affirmance of the decree, this Court will assume that the chancellor so inferred. Not only this, but from the fact that Pennock's grantees have occupied the premises covered by that lease down to the present time, it is fair to presume that Pennock entered for the whole of the unexpired term of the lease, and as assignee of the term. *Bedford* v. *Terhune*, 30 N. Y. 453, 86 A. D. 394. The foregoing negatives any force that defendants' exception might otherwise have to the admission of the deed from Pennock, on the ground that no right, title, or interest in Lot 125 had been shown to be in him.

It is further found that the line claimed by the plaintiff to be the division line between the east and the west parts of Lot 125, namely, line A-B-C-D on the Welch plan, is the division line from point A through B to C, and that the division line from point C to point D is at the brow of the mountain; that said line A-B-C and from C along the brow of the mountain to point D has been recognized as the division line between the east and the west part of said lot by all persons interested in either part, except Hassam, for more than forty years; that the line C to D on the Welch plan, marked "brow of the hill," was not made from actual survey, and while it follows the brow of the mountain approximately, the chancellor was not satisfied that it accurately represents the brow of the mountain, or the true division line between point C and point D. All the acts of trespass by Hassam were some distance west of the brow of the mountain.

[9] Subject to exception, the plaintiff was permitted to show by a witness who worked for Judevine for three years next before his death, and had charge of his part of the lot, and continued to work for the estate of Judevine for eighteen years thereafter, that he helped about keeping up the fence at the north boundary of Judevine's land in those years within his lifetime, and that the latter knew where the fences were being kept up at that time. This evidence was properly received. It tended to show use and occupation by those owning and occupying the land on the east side of the division line between the two parts of the lot; and while evidence of use and occupation alone by those owning and occupying lands in either part would have no legal tendency to show where the disputed line was, yet such evidence in connection with the fact that such line and occupation was in

accordance with the line in dispute, would have a tendency to show where the line was. *Beach* v. *Fay*, 46 Vt. 337; *Aldrich* v. *Griffith*, 66 Vt. 390, 29 Atl. 376.

It appeared from a certified copy of the record of the town, introduced in evidence by the defendants, that on October 19, 1816, the then selectmen of the town leased all of Lot 125 to one Gideon Burnham. Nothing further appeared before the chancellor with reference to this transaction. It did not appear that Burnham ever took possession of the premises under the lease, nor that he ever paid any rent to the town or to any one, nor "that said lease was ever revoked or modified, unless a revocation may be found from the fact that said town through its selectmen leased part of said lot to said William Barnes, as set forth in the findings, together with the recitals in said lease to said Barnes. If a revocation may be found from these facts, I find that there was a revocation of said Burnham lease."

That lease was for the term "so long as wood grows and water runs," reserving a yearly rent of six dollars to be paid annually by the lessee, his heirs, executors, administrators, or assigns, into the treasury of the town. It further provided that if it happened so that he or they could not make payment of the year's rent when it became due, then in that case the payment of said year's rent one year thereafter with interest at twelve per cent. per annum "shall answer to all intents and purposes as well as if paid according to the engagement." It contained the further provision that "if defaults be made on his or their part then this lease, so far as it concerns the committee or town aforesaid, to be void and null and of no force, and the said Gideon Burnham, his heirs, executors, administrators, and assigns and each and any of them shall never thereafter have any right, title, tenement-ship, interest, or demand of, in, or unto the aforesaid described land or any part or parcel thereof, or to any betterments, improvements or appurtenances thereto belonging, by virtue of this lease, but the disposal thereof shall then revert back again to the town aforesaid as fully and absolutely as if the lease had never been made."

[10, 11] The averment in the answer of a lease being given by the selectmen of the town to Benjamin Ainsworth, together with the claim to own all of the lessees' rights under it, constitute an admission of record that a lease was executed and delivered to Ainsworth; and evidence to that effect is found, not

only in the Barnes lease, but in the quitclaim deeds from Nelson to Baker and Judevine, and from Judevine to Morse and Ethan N. Ainsworth, two deeds in defendants' chain of leasehold title (under Benjamin Ainsworth) of the east portion of Lot 125. In the former of these two deeds the particular description of the land conveyed, concludes: "intending by this to be the same premises occupied by the late Benjamin Ainsworth to the time of his death." The latter contains a statement to the same effect. Since defendants claim title under these deeds, they are bound by the recitals therein, by way of estoppel. *Davis* v. *Moyles,* 76 Vt. 25, 56 Atl. 174. They are also estopped from denying the right of the town to give the Benjamin Ainsworth lease because of the previously executed Burnham lease covering the same land. To hold that they could set up a leasehold title under a lease of earlier date, executed and delivered by the town to a third person under whom (as will be seen) they have no standing, would be tantamount to saying that those holding under a lease may deny the lessor's title, a position the mere statement of which shows its unsoundness in principle. *Blake* v. *Howe,* 1 Aik. 306, 15 A. D. 681. This, however, applies to only so much of the lot as is within the Ainsworth lease.

[12] The Barnes lease was given by the town on its own account, and the same was ever thereafter operated under by both parties thereto. This the town had no right to do if it would still hold the lessee in the Burnham lease, his legal representatives or assigns, for rent thereunder. We think that in the circumstances appearing of record before us, the giving of the Barnes lease was an act showing unmistakably the resumption of possession of the lot by the town, and warranted a finding that the Burnham lease had become null and void under its terms relating to forfeiture, or had been abandoned by mutual consent. *Pelton* v. *Place,* 71 Vt. 430, 46 Atl. 63; *Biggs* v. *Stueler,* 93 Md. 100, 48 Atl. 727. Let it be either way, it falls within the term "revocation," used by the chancellor; for a revocation may be by operation of law, or by act of the parties.

[13] On May 31, 1915, Melvin G. Morse executed and delivered to Hassam a quitclaim deed of all his interest in and to Lot 125, stating therein: "Being the same lot leased by the selectmen of Woodbury to one Gideon Burnham." On the next day this deed was recorded in the land records of the town. On June 18, 1915, Hassam gave to defendant Gallagher a quitclaim

deed (which was recorded on the same day) of an undivided one-half interest in that part of this lot situated on the west side of the main highway leading from Hardwick to Woodbury, stating therein: "said land being a part of Lot 125 and deeded me by M. G. Morse in his quitclaim deed dated May 31, 1915." Nothing further appeared in connection with this transaction. Gideon Burnham was uncle to the mother of Melvin G. Morse. She died before he gave the quitclaim deed to Hassam as mentioned above.    The findings of fact state: "It did not appear that said Morse had any interest in or title to said lot unless that fact would be inferred from the fact of his relationship to said Burnham as stated above."

But such an interest in Morse is not to be inferred from the mere fact of his relationship.    Although the presumption of law is that every deceased person leaves heirs who are capable of inheriting, or next of kin, there is no presumption that a person of mature years left no children, nor father, nor mother.    Burnham may have left heirs of a higher degree than brothers and sisters, or nephews and nieces.    Since the defendants claim the right to take from Gideon Burnham through a grandnephew of Burnham, they have the burden of proving facts necessary to sustain such right.    *Delany* v. *Noble,* 3 N. J. Eq. 441; *Stinchfield* v. *Emerson,* 52 Me. 465, 83 A. D. 524; *Mitchell* v. *Thorne,* 134 N. Y. 536, 32 N. E. 10, 30 A. S. R. 699; 18 C. J. 872.    It follows that for this reason, as well as for the reason of a revocation of the Burnham lease, the Morse deed to Hassam conveyed nothing, and consequently the Hassam deed to Gallagher conveyed nothing. As a conveyance of land within the limits of the plaintiff's leasehold estate here in question, or any interest therein, each of said deeds is without force and void.

In view of the foregoing holding, the questions presented on the exception to the finding that the recording of the Hassam deed to Gallagher constitutes a cloud upon plaintiff's title, need no special consideration.

[14]    Defendants rely on many other exceptions, all of which we have carefully examined.    They are all in effect disposed of by what we have already said; or no ground of the exception was stated when taken; or (as in a number of instances) exceptions were taken to findings made as not supported by the evidence, regarding which suffice it to say that the transcript is not before us for such purpose, and so it cannot be said in review

that the findings were not all warranted by the evidence. Defendants say in their brief that they requested the chancellor to send up the transcript for this purpose also. But the making of such a request is not shown by the record.

*Decree affirmed, and cause remanded.*